IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 14–cv–02060–KMT

SONIA M. TRUDELL,

     Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

     Defendant.

---

# ORDER

---

This case comes before the court on review of the Commissioner's denial of Plaintiff-Claimant Sonia M. Trudell's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act ("the Act").  Jurisdiction is proper under 42 U.S.C. § 405(g).

## FACTUAL AND PROCEDURAL BACKGROUND

Claimant applied for DIB and SSI in July 2011, alleging that she had been disabled by depressive disorder, cognitive disorder, and Post-Traumatic Stress Disorder since April 2009. (*See* Doc. No. 8, Social Security Administrative Record ["AR"] at 192, 202, 225.)  The Commissioner denied both applications.  (*Id.* at 20, 95.)  Following the denials, Claimant requested and received a hearing by an Administrative Law Judge ("ALJ").  (*Id.* at 40–74, 99.) After the hearing, the ALJ determined that Claimant was not disabled within the meaning of section 1614(a)(3)(A) of the Act, because Claimant was still capable of working as a cleaner, a

job she had held in the past.  (*See id.* at 33.)  The Appeals Council subsequently denied

Claimant's request for review (*id.* at 1), making the ALJ's decision the final decision of the

Commissioner for purposes of judicial review.  *See* 20 C.F.R. §§ 404.981, 422.210(a).  Claimant

timely sought review by the Court.

## STATUTORY AND REGULATORY BACKGROUND

Titles II and XVI of the Act award Social Security benefits to claimants who meet certain

eligibility requirements.  42 U.S.C. §§ 423, 1382.  To receive either DIB or SSI, a claimant must

be disabled.  §§ 423, 1382.  The Social Security Commissioner has established a five-step

sequential process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity.  A claimant who works is not disabled, regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe."  A "severe" impairment significantly limits the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or "equals" in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, then the ALJ must determine whether the claimant can still perform any past work despite his or her limitations.

5. If the claimant no longer retains the ability to perform past work, then the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy despite the claimant's limitations.

*See* 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir.

1988).  The claimant has the initial burden of establishing a disability in the first four steps of

this analysis.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  After that, the burden shifts to

the Commissioner to prove that, despite the claimant's impairments, he or she is still capable of

performing substantial gainful work in the national economy.  *Id.*  If at any point the Commissioner conclusively finds that the claimant is or is not disabled during the five-step review process, the analysis ends.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

## STANDARD OF REVIEW

Review of the Commissioner's disability decision by this court is limited to determining whether the ALJ applied the correct legal standard, whether the decision is supported by substantial evidence, and whether the decision comports with the relevant regulations and caselaw.  *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990); *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).  An ALJ's failure to apply the correct legal standard constitutes an independent and sufficient basis for the Court to reverse the ALJ's decision.  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).  Likewise, an ALJ's failure to supply the Court with a sufficient basis to determine that the ALJ followed appropriate legal principles is also grounds for reversal.  *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quoting *Smith v. Heckler*, 707 F.2d 1284 (11th Cir. 1983)).

## ANALYSIS

Claimant alleges the Commissioner erred in three ways.  First, Claimant argues that the ALJ erred at step three of the disability review process by relying on irrelevant evidence and by failing to obtain an updated opinion from a medical expert before deciding that Claimant's impairments met or equaled an Appendix 1 listing.  (*See* Doc. No. 11 [Opening Br.] at 2–4, filed Nov. 14, 2014.)  Second, Claimant argues that the ALJ failed to properly weigh the examination

results and opinion of Dr. Pelc, one of the claimant's examining doctors.  (*See id.* at 4–7.)  Third, Claimant faults the Appeals Council for not remanding the claim for additional consideration of Dr. Pelc's opinion and test results.  (*See id.* at 7–8.)

### 1. The ALJ's Reliance on "Irrelevant" Evidence and Reliance on "Stale" Medical Opinions at Step Three

The claimant calls the ALJ's step-three decision a "medical decision," and faults the ALJ for considering non-medical evidence, including evidence of the claimant's daily activities.  (*See id.* at 2–4.)  The claimant also argues that the ALJ needed to obtain an updated expert medical opinion because, according to the claimant, the only expert opinion that had been sought at that point was "stale" and based on "incomplete evidence."  (*Id.* at 3.)

The ALJ is entrusted with the difficult task of resolving evidentiary conflicts, weighing medical source opinions, and, ultimately, determining whether claimants are disabled within the meaning of the Act.  *See Richardson v. Perales*, 402 U.S. 389, 399 (1971).  Whether a claimant's impairment meets or equals an Appendix 1 listing at step three is one of those determinations reserved to the ALJ.  *See* 20 C.F.R. §§ 404.1527(e), 413.927(e); SSR 96-5p, 1996 WL 374183 *2.  As part of that determination, the ALJ must "evaluate all evidence in the case record that may have a bearing on the determination or decision of disability."  SSR 96-5p, 1996 WL 374183 *3.  The ALJ must "always carefully consider medical source opinions," even when the medical source opinions concern issues reserved to the Commissioner.  *Id.* at *2.  If the record contains a medical source opinion on an issue reserved to the Commissioner, the ALJ must evaluate that opinion's consistency with the record using the six factors found in 20 C.F.R. §§ 404.1527(d) and 416.927(d), and explain the weight given to these opinions.  *Id.*; SSR 96-6P, 1996 WL 374180, at *1.

It is the Commissioner's longstanding policy that the judgment of a doctor designated by the Commission "be received into the record as expert opinion evidence and given appropriate weight" before completing step three of the disability review process. *Carbajal v. Astrue*, No. 10-CV-02025-PAB, 2011 WL 2600984, at *2 (D. Colo. June 29, 2011) (quoting SSR 96-6p, 1996 WL 374180, at *3). The ALJ must obtain an updated medical opinion from a medical expert on the question of Appendix 1 equivalency when, *in the opinion of the ALJ*, either new evidence could change the state agency medical consultant's findings as to equivalency, or the symptoms, signs, and laboratory findings suggest equivalence with a listing. *See* SSR 96-6p, 1996 WL 374180, at *3–4 (emphasis added). The Commissioner's rules do not specify whether and where the ALJ must express this opinion. *See id.* at *1–4.

With respect to mental impairments, such as the impairments alleged here, the regulations specifically require the ALJ to consider the claimant's "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). *See also* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12(C)(1).[1] But regardless of the type of impairment, step-three equivalency is a matter reserved to the ALJ. *See* 20 C.F.R. § 404.1527(d)(2).

Here, the ALJ considered the opinions of three medical experts, Drs. Suyeishi, Pelc, and Graham. (*See* AR at 28–32.) Dr. Suyeishi, the state agency psychological consultant, concluded that the claimant's mental impairments met some but not all of the requirements of the Appendix

---

[1] An ALJ's consideration of these same factors may not, however, be appropriate when determining whether non-mental limitations meet or equal the criteria of an Appendix 1 listing. *See* SSR 96-5p, 1996 WL 374183, at *3 ("Whether the findings for an individual's impairment meet the requirements of an impairment in the listings is usually more a question of medical fact than a question of medical opinion."). The impairments alleged here, however, are all mental.

1, 12.04 and 12.06 listings because, in part, the claimant had only mild limitation in her ability to maintain concentration, persistence, or pace. (*See id.* at 28.)  Dr. Pelc, an examining psychological expert, opined that the claimant had a marked limitation in concentration, persistence, or pace, (*see id.* at 30) which, if true, would help to qualify the claimant for an Appendix 1 listing.  *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04 ¶ B (requiring the claimant have marked difficulties in maintaining concentration, persistence, or pace).  The ALJ used the claimant's daily activities, including maintenance of personal hygiene, preparation of meals, visits with others, daily driving, and doing household chores, to discount some of Dr. Pelc's findings.  (*See* AR at 31.)  Dr. Graham, an examining psychiatrist, disagreed with Dr. Pelc's findings, concluding that the claimant had no limitation in concentration, persistence, or pace because she was able to perform "serial sevens" quite rapidly.[2]  (*See id.* at 30, 32.)  The ALJ assigned limited weight to Dr. Suyeishi's opinion, significant weight to Dr. Pelc's opinion, and even greater weight to Dr. Graham's opinion.  (*See id.* at 28–32.)  The ALJ then concluded that, based on the opinions of Drs. Graham and Suyeishi, the claimant's impairments did not meet or equal an impairment listed in Appendix 1.  (*Id.* at 32.)

It is not clear why the claimant believes the ALJ was required to receive an updated medical expert opinion after having already received and evaluated three medical opinions.  The ALJ never expressed an opinion that she thought the evidence demanded an updated opinion.  (*See id.* at 20–35.)  *See also* SSR 96-6p, 1996 WL 374180, at *3–4 (stating that the ALJ could seek an updated opinion if, in the ALJ's judgment, the evidence demanded one).  Nevertheless,

---

[2] "Serial sevens" require the claimant to count down from 100 by seven. (*See id.* at 30.)

at the claimant's request, the ALJ sought the additional opinion of Dr. Graham after the disability hearing.  (*See* Opening Br. at 3.)

The court finds no fault with the ALJ's consideration of the claimant's significant daily activities as evidence that the claimant did not meet an Appendix 1 listing.  Appendix 1 requires consideration of the claimant's daily activities.  *See* pt. 404, subpt. P, app. 1, § 12(C)(1) (listing "daily activities" as a factor).  *See also* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).  Also, despite the claimant's contentions, the ALJ considered not one, but two different medical experts when determining that the claimant's impairments did not meet or equal an Appendix 1 listing. Accordingly, the court finds no reversible error as to this argument.

### 2.   The ALJ's Weighing of Dr. Pelc's Opinion and Test Results

Next, Claimant argues that the ALJ failed at step three to properly weigh Dr. Pelc's opinion and test results.  (*See* Opening Br. at 4–7.)  Specifically, Claimant contends that the ALJ failed to consider and discuss all six of the factors listed in 20 C.F.R. §§ 404.1527(c), and failed to explain the weight she ultimately assigned Dr. Pelc's psychological test results.  (*See id.*)

When deciding how much to weight to assign a medical source's opinion, the ALJ must consider six factors:

(1) the length of the treatment relationship and the frequency of examination;

(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;

(3) the degree to which the physician's opinion is supported by relevant evidence;

(4) consistency between the opinion and the record as a whole;

(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and

(6) other factors brought to the ALJ's attention that tend to support or contradict the opinion.

*See* 20 C.F.R. §§ 404.1527(c), 416.927.  Then, in the ALJ's written decision, the ALJ must clearly state how much weight the ALJ ultimately assigned the opinion and why.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003).  The ALJ must "give good reasons" for that weight, but need not discuss each of the six factors.  *Id.* (quoting 20 C.F.R. § 404.1527(d)(2)); *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

The ALJ must support his or her step three equivalence determination with evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).  Though the ALJ need not discuss every bit of evidence, the ALJ must consider all the relevant evidence, discuss the evidence supporting her decision, and address the uncontroverted evidence upon which the ALJ chooses not to rely or the significantly probative evidence the ALJ rejects.  *Id.*

Here, the ALJ summarized Dr. Pelc's findings and observations, examined his opinion, and ultimately assigned his opinion "significant weight."  (*See* AR at 29–30.)  While summarizing Dr. Pelc's findings, the ALJ pointed out a number of reasons to diminish the weight of Dr. Pelc's opinion.  (*See id.*)  The ALJ noted that the claimant told Dr. Pelc that she did not use a computer despite having told the ALJ that she did.  (*Id.* at 29.)  The ALJ also highlighted Dr. Pelc's observation that the claimant's MCMI-III profile was invalid because the claimant "over-endorsed pathological items at a level which did not allow for interpretation of the profile," adding that the "over endorsement" could be a product of "significant pathology, exaggerated responding, lack of understanding, or insufficient ability to sustain attention."  (*Id.*)

Then, in the ALJ's weighing of Dr. Pelc's and Dr. Graham's opinions, the ALJ noted that the "Dr. Pelc's GAF score is significantly inconsistent with the claimant's reported daily

activities." (*Id.* at 31.)  As support for this assertion, the ALJ stated that "car[ing] for personal

hygiene, prepar[ing] meals, vist[ing] with others, car[ing] for the claimant's baby daughter"

during the alleged period of disability, "driv[ing] daily, do[ing] household chores, . . . read[ing] a

novel in "two to three days, us[ing] the computer several hours a day, go[ing] to the library,

attend[ing] movies, go[ing] out to eat on occasion" are, together, "inconsistent with a GAF of 47,

which indicates serious functional impairment" and "diminishes the persuasiveness" of Dr.

Pelc's opinion that the claimant has moderate to marked limitations in the activities of daily

living.  (*See id.*)  Further, the ALJ agreed with Dr. Pelc about the limitations on claimant's social

functioning, but stated that the claimant's "ability to get along with her examiners and her

roommate indicates that she could tolerate occasional interaction with co-workers and

supervisors."  (*Id.*)

The ALJ then took special note of Dr. Pelc's objective psychological tests, which the ALJ

accepted in part and rejected in part, based primarily on the invalid MCMI-III test due to the

claimant's "over-endorsement."[3]  (*See id.* at 31–32.)  The ALJ said this "over-endorsement"

could be due to "exaggerated responding" by the claimant.  (*Id.* at 32.)  After acknowledging that

the claimant "displayed a significantly reduced processing speed" on the test, the ALJ noted that

Dr. Graham "observed no limitations on the mental status testing and even noted that [the

claimant] performed serial sevens 'quite rapidly and accurately,'" and stated that these findings

were "inconsistent with Dr. Pelc's finding that the claimant is markedly impaired in maintaining

---

[3] The ALJ does not define "over-endorsement."  *See generally* AR.  It does, appear, however,
that the term is used to describe a claimant's exaggerated responses on tests.  (*See id.* at 29
[hypothesizing that the claimant's "over-endorsement" could be a product of "significant
pathology, exaggerated responding, lack of understanding, or insufficient ability to sustain
attention"].)

concentration, persistence, or pace." (*Id.*) The ALJ further noted that although both Dr. Graham and Dr. Pelc examined the claimant only once, Dr. Graham had the benefit of reviewing Dr. Pelc's opinion. (*See id.*) Finally, the ALJ concluded that in spite of reviewing and considering Dr. Pelc's objective findings, the claimant had a "greater functional capacity" than that assessed by Dr. Pelc because of her "relatively normal" mental status examination with Dr. Graham. (*Id.*)

Though the ALJ never recited the six factors in 20 C.F.R. § 404.1527(c), it is clear from the ALJ's extensive discussion of Dr. Pelc's findings and opinion that she properly considered the factors. She noted the length, nature, and extent of the treatment relationship for both Dr. Pelc and Dr. Graham. She compared and contrasted Dr. Pelc's opinion with the claimant's own statements, the findings of Dr. Graham, and the claimant's daily activities. The ALJ also considered other factors brought to the ALJ's attention that diminished the persuasiveness of Dr. Pelc's opinion, including the claimant's "exaggerated responding" and "over-endorsement." (*See id.* at 31–32.) Moreover, though the claimant alleges otherwise, the ALJ specifically addressed, evaluated, and discussed Dr. Pelc's psychological exam results. The ALJ did not expressly compare the length of Dr. Pelc's exam to Dr. Graham's or discuss the results of Dr. Pelc's "RBANS" test (*see* Opening Br. at 7; AR at 28–33), but the ALJ's detailed summary and analysis of Dr. Pelc's observations and tests shows that the ALJ at the least considered all of Dr. Pelc's tests.

The claimant argues that ALJ's are required to explain the relative weight they give to evidence submitted by a claimant that bears on the question or whether or not the claimant is disabled, but cites no law to support this proposition. (*See* Opening Br. at 7.) Though the ALJ must *consider* all relevant evidence, the ALJ need not *discuss* every bit of evidence. *See Clifton*,

79 F.3d at 1009–10.  The ALJ's analysis and explanation is sufficient to pass legal muster, and this court declines to reweigh the evidence as the claimant would prefer.  *See Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987) (stating that the Court may not "reweigh the evidence" or "substitute its judgment" for that of the Commissioner).

**3.   The Appeals Council's Decision to Deny Claimant's Request for Remand**

Finally, Claimant alleges that the Appeals Council erred by not remanding the claimant's disability claim for "proper" consideration of Dr. Pelc's opinion and test results.  (*See* Opening Br. at 7–8.)

The Appeals Council will review a case when:

(1)  There appears to be an abuse of discretion by the ALJ

(2)  There is an error of law;

(3)  The action, findings, or conclusions of the ALJ are not supported by substantial evidence; or

(4)  There is a broad policy or procedural issue that may affect the public interest.

20 C.F.R. § 404.970.  On appeal, the Appeals Council must consider any a) new, b) material, c) evidence related to the period on or before the date of the ALJ's decision.  *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003).  Evidence is new if it is not duplicative or cumulative.  *Id.*  Evidence is material if there is a "reasonable possibility" that it would change the outcome of the disability decision.  *Id.*

Here, the claimant asked the Appeals Council to review the existing evidence in the record alongside a supplemental letter by Dr. Pelc and an affidavit by the claimant's uncle.  (*See* AR at 281–84.)  Dr. Pelc's letter addressed Dr. Graham's opinions and reiterated Dr. Pelc's

conclusions, but did not include any new findings.  (*See id.* at 358.)  The affidavit by the

claimant's uncle stated only that he drove the claimant to Dr. Graham's examination and that Dr.

Graham spent a total of thirty two minutes examining the claimant.  (*Id.* at 285.)

      The Appeals Council "found no reason under our rules to review the Administrative Law

Judge's decision," and therefore denied the claimant's request for review.  (*Id.* at 1.)  In its denial

letter, the Appeals Council summarized the existing evidence, addressed the additional letter

submitted by Dr. Pelc, and explained why they agreed with the ALJ that Dr. Graham's opinion

was more consistent with the evidence than Dr. Pelc's.  (*See id.* at 1–3.)  As part of its

explanation, the Appeals Council discussed why Dr. Pelc's letter did not alter the

Commissioner's decision or warrant remand.  (*Id.* at 3.)  The Appeals Council's denial letter did

not discuss the claimant's uncle's affidavit.  (*See id.* at 1–3.)

      Dr. Pelc's letter is new evidence because it expresses the Dr. Pelc's assessment of Dr.

Graham's opinion, which is something Dr. Pelc had not had the opportunity to do previously.

(*See id.* at 32.)  Claimant's uncle's affidavit is new evidence because it quantifies, for the first

time, the amount of time Dr. Graham actually spent examining the claimant.  (*See id.* at 344–49.)

Dr. Pelc's letter is material evidence because there is a reasonable possibility that Dr. Pelc's

letter containing an assessment of Dr. Graham's opinion would change the Commissioner's

decision.  The ALJ had cited Dr. Graham's review of Dr. Pelc's report as a reason to assign

greater weight to the opinion of Dr. Graham than to the opinion of Dr. Pelc, who had not, at that

point, had the advantage of reviewing Dr. Graham's reports.  (*See id.* at 32.)  Claimant's uncle's

affidavit is material because the ALJ's disability decision hinged largely on the weight assigned

to Dr. Graham's opinion, and there is a reasonable possibility that a thirty-two minute

examination would diminish the weight the Commissioner assigned Dr. Graham's opinion.  Dr.

Pelc's letter related to the period on or before the date of the ALJ's decision because the letter

discussed Dr. Graham's opinion and the claimant's previous test results with Dr. Pelc, both of

which occurred prior to the ALJ's decision.  (*Compare id.* at 17 [showing ALJ's date of decision

as March 2013] *with id.* at 344 [showing Dr. Graham examined the claimant in February 2013].)

Claimant's uncle's affidavit also related to the period on or before the date of the ALJ's decision

because it references the amount of time Dr. Graham examined the claimant, which occurred

before the ALJ's decision.  (*Compare id.* at 17 [showing ALJ's date of decision as March 2013]

*with id.* at 344 [showing Dr. Graham examined the claimant in February 2013].)  As a result, the

Appeals Council was required to review both Dr. Pelc's letter and Claimant's uncle's affidavit as

additional evidence, which it did.

The Appeals Council directly addressed and explained why Dr. Pelc's letter did not

convince it to remand or reverse the ALJ's decision.  It therefore satisfied its burden to, at a

minimum, consider Dr. Pelc's letter.  Though the Appeals Council did not directly address the

claimant's uncle's affidavit, the Council did list the affidavit as additional evidence (*id.* at 7),

stated in its denial letter that it had reviewed the entire record (*id.* at 3), and showed that it had

considered other new evidence by addressing Dr. Pelc's letter.  The court is therefore satisfied

that the Council did, at a minimum, consider the affidavit.

Because the Appeals Council found no other reason to reverse or remand, the Council did

all that is required of it to deny Claimant's request for review.

## CONCLUSION

Having considered and rejected each of Claimant's assignments of error, it is

**ORDERED** that the Commissioner's decision through the Administrative Law Judge is

**AFFIRMED.**  It is further

**ORDERED** that Defendant is awarded costs pursuant to Fed. R. Civ. P. 54(d)(1) and

D.C.COLO.LCivR 54.1.

Dated this 22nd Day of September, 2015.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge